**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

EDWARD DAGNES,
an individual

Civil Action No.: 2:25-cv-10622

                        Plaintiff,          HON.

vs.

TJ SQUARED, LLC,
a Michigan limited liability company,

MONICA VANOVERMEER
an individual,

JOSEPH VANOVERMEER
an individual, and

JEFFREY VANOVERMEER
an individual

                        Defendants.

---

Robert M. Howard (P80740)
Bradley K. Glazier (P35523)
CUNNINGHAM DALMAN PC
Attorneys for Plaintiff
321 Settlers Road
Holland, MI 49422
(616) 458-6814

---

## <u>COMPLAINT AND JURY DEMAND</u>

### I.    INTRODUCTION

1.    Edward Dagnes, brings this action against Defendant TJ Squared, LLC d/b/a Jet's Pizza, Monica VanOvermeer, Joseph VanOvermeer, and Jeffrey VanOvermeer (collectively "defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff with minimum wages as required by the Fair Labor Standards Act ("FLSA") of

1938, as amended, 29 U.S.C. § 201, *et seq* and the Michigan Improved Workforce Opportunity Wage Act, MCL ("IWOWA") 408.931, *et seq.*

2.      Defendants operate a Jet's Pizza Franchise located at 978 E. Michigan Avenue, Saline, Michigan, 48176.

3.      Defendants repeatedly and willfully violated the Fair Labor Standards Act, M.C.L.A. §408.931, by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wages for all hours worked.

## II.      JURISDICTION AND VENUE

4.      Under 28 U.S.C. §1331 and 29 U.S.C. §216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

5.      Under 28 U.S.C. §1367, this Court has supplemental jurisdiction over Plaintiff's Michigan law claims.

6.      Venue in this Court is proper under 28 U.S.C. §1391(b) because the parties reside in this district and the events giving rise to the claim herein occurred in this district.

## III.      PARTIES

7.      Plaintiff Edward Dagnes resides in Ann Arbor, Michigan and during the events described in this complaint, Dagnes worked within the boundaries of the Eastern District of Michigan.

8.      Plaintiff was an "employee" of  the Defendants as defined in the FLSA and MCL §408.932.

9.      Defendant TJ Squared, LLC ("TJ Squared") is a Michigan limited liability company with its principal place of business in Saline, Michigan.

2

10.   TJ Squared was organized in 2003.

11.   TJ Squared had substantial control over Dagnes' working conditions, and over the unlawful policies and practices alleged it this complaint.

12.   Upon information and belief, TJ Squared applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

13.   TJ Squared had direct or indirect control of the terms and conditions of Dagnes' work.

14.   At all relevant times, TJ Squared maintained control, oversight, and direction over Dagnes, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

15.   TJ Squared is an "employer" of Dagnes as that term is defined by the FLSA and MCL §408.932.

16.   At all relevant times, TJ Squared has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

17.   TJ Squared's gross revenue exceeds $500,000 per year.

18.   Monica VanOvermeer owned and operated TJ Squared until January 1, 2023.

19.   Joseph VanOvermeer owns and operates TJ Squared from January 1, 2023 to present.

20. Monica VanOvermeer and Joseph VanOvermeer owned and operated Defendants' Jet's Pizza restaurant in Saline, Michigan.

21. Monica VanOvermeer and Joseph VanOvermeer are individually liable to Dagnes under the definitions of "employer" set forth in the FLSA and MCL §408.932, because they own and operate Defendants' Jet's Pizza store, serve as a manager of Defendants' Jet's Pizza store, ultimately control significant aspects of the store's day-to-day functions, and ultimately control compensation and reimbursement of employees. 29 U.S.C. §203(d).

22. At all relevant times, by virtue of their roles as owners and operators of Defendants' Jet's Pizza store, Monica VanOvermeer and Joseph VanOvermeer had financial control over the operations at each of Defendants' Jet's Pizza store.

23. At all relevant times, by virtue of their roles as owners and operators of Defendants' Jet's Pizza store, Monica VanOvermeer and Joseph VanOvermeer had a role in significant aspects of Defendants' Jet's Pizza store's day to day operations.

24. At all relevant times, by virtue of their roles as owners and operators of Defendants' Jet's Pizza store, Monica VanOvermeer and Joseph VanOvermeer had control over Defendants' Jet's Pizza store's pay policies.

25. At all relevant times, by virtue of their roles as owners and operators of Defendants' Jet's Pizza store, Monica VanOvermeer and Joseph VanOvermeer had power over personnel and payroll decisions at the Defendants' Jet's Pizza store, including but not limited to influence of delivery driver pay.

26. At all relevant times, by virtue of their roles as owners and operators of Defendants' Jet's Pizza store, Monica VanOvermeer and Joseph VanOvermeer had the

4

power to hire, fire and discipline employees, including delivery drivers at Defendants' Jet's Pizza store.

27.     At all relevant times, by virtue of their roles as owners and operators of Defendants' Jet's Pizza store, Monica VanOvermeer and Joseph VanOvermeer had the power to stop any illegal pay practices that harmed delivery drivers at Defendants' Jet's Pizza store.

28.     At all relevant times, by virtue of their roles as owners and operators of Defendants' Jet's Pizza store, Monica VanOvermeer and Joseph VanOvermeer had the power to transfer the assets and liabilities of Defendants.

29.     At all relevant times, by virtue of their roles as owners and operators of Defendants' Jet's Pizza store, Monica VanOvermeer and Joseph VanOvermeer had the power to declare bankruptcy on behalf of Defendants.

30.     At all relevant times, by virtue of their roles as owners and operators of Defendants' Jet's Pizza store, Monica VanOvermeer and Joseph VanOvermeer had the power to enter into contracts on behalf of each of Defendants' Jet's Pizza store.

31.     At all relevant times, by virtue of their roles as owners and operators of Defendants' Jet's Pizza store, Monica VanOvermeer and Joseph VanOvermeer had the power to close, shut down, and/or sell each of the Defendants' Jet's Pizza store.

32.     At all relevant times, by virtue of their roles as owners and operators of Defendants' Jet's Pizza store, Monica VanOvermeer and Joseph VanOvermeer had authority over the overall direction of Defendants' Jet's Pizza store and was ultimately responsible for its operations.

33.     Jeffrey VanOvermeer operated TJ Squared's Jets Pizza Store in Dexter, Michigan.

34.     Jeffrey VanOvermeer often worked in the Saline Jets Pizza store.

35.     When Jeffrey VanOvermeer worked in the Saline store, he exercised managerial control over the operations and employees of that store.

36.     Jeffrey VanOvermeer was an employer for purposes of the FLSA and Michigan wage laws.

37.     Defendants employed Dagnes as a delivery driver.

38.     Defendants had substantial control over Dagnes' working conditions, and over the unlawful policies and practices alleged herein.

39.     Defendants suffered or permitted Dagnes to work.

40.     Defendants had direct or indirect control of the terms and conditions of Dagnes' work and also exercised that authority.

41.     At all relevant times, Defendants maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

## IV.      FACTUAL ALLEGATIONS

42.     During all relevant times, defendants operated the Jet's Pizza franchise in Saline, Michigan.

43.     The primary function of defendants Jet's Pizza store is to sell pizza and other food items to customers, whether they chose carry out, or have their food delivered.

6

44. Defendants employ delivery drivers who are primarily responsible for delivering pizzas and other food items to customers' homes and workplaces.

45. Dagnes is a former delivery driver employed by defendants at their Jet's Pizza store in Saline, Michigan.

46. Dagnes worked at defendants' Jet's Pizza store from approximately June 2018 until June 16, 2024.

47. All delivery drivers employed at defendants' store during the relevant time period have had essentially the same job duties—to deliver pizza and other food items to customers.

48. Dagnes delivered pizza and other food items to defendants' customers' homes and businesses.

49. When he was not making deliveries, Dagnes worked inside the restaurant, completing tasks such as scraping, wiping, and oiling deep dish pans, folding pizza boxes, cleaning up around the store, and taking care of other general tasks for the operation of the restaurant.

50. At all relevant times, Dagnes was paid an hourly wage rate at or close to minimum wage for the hours he worked for defendants.

51. Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering pizza and other food items.

52. Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone costs, and other equipment necessary for delivery drivers to complete their job duties.

7

53.     Pursuant to such requirements, Dagnes purchased uniforms and work attire, gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation, automobile financing, and incurred cell phone and data charges all for the primary benefit of defendants.

54.     Defendants did not keep track of their delivery drivers' actual expenses.

55.     Defendants did not reimburse delivery drivers for their actual expenses.

56.     Defendants did not reimburse delivery drivers at the IRS standard business mileage rate for all of the miles they drive completing deliveries.

57.     At all relevant times, Dagnes was reimbursed a flat per delivery amount of $.50/delivery for the expenses he incurred from January 2019 to April 19, 2022, and a flat per delivery amount of $1.50, or $2.50/delivery for the expenses he incurred from April 20, 2022 onward. Drivers were paid $1.50 for deliveries less than nine (9) miles roundtrip and $2.50 for deliveries greater than nine (9) miles roundtrip. (Rates based on distance from defendants' Jet's Pizza location in Saline).

58.     Defendants created the reimbursement rate based on their alleged "reasonable approximation" of a delivery driver's expenses.

59.     Employers are not permitted to use reasonable approximation to determine the reimbursement paid to delivery drivers for the use of their vehicles. *Parker v. Battle Creek Pizza.*, 95 F.4th 1009, 1016 (6th Cir. 2024).

60.     Dagnes typically averaged six miles per round-trip delivery.

61.     Dagnes typically made at least two (2) deliveries per hour.

62.     Thus defendants' effective reimbursement rate was .08 cents per mile from 2019 to April 19, 2022, and $.25 per mile at $1.50, or $.20 per mile at $2.50.[1]

63.     According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

a.     2022: 60.5 cents/mile
b.     2023: 65.5 cents/mile
c.     2024: 67 cents/mile.

64.     Regardless of the precise amount of the per-delivery reimbursement at any given point in time, defendants' reimbursement formula has resulted in an unreasonable underestimation of delivery drivers' automobile expenses throughout the recovery period, causing systematic violations of the minimum wage laws.

65.     Because defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to defendants an amount sufficient to cause minimum wage violations. See 29 C.F.R. §531.35.

66.     In 2022, for example, the IRS business mileage reimbursement was $.605 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Thus in 2022, every mile driven on the job decreased Dagnes' net wages by approximately $.52 ($.60 - $.08) per mile.[2] Considering Dagnes' estimate of about 6 average miles per delivery, Defendants under-reimbursed him about $3.12 per delivery ($.52 x 6 average miles).

---

[1] $.08 per mile results from $.50 per trip reimbursement/6 mile average delivery, .50/6=.08333, $.25 per mile results from $1.50/6 miles, and $.20 from $2.50/12 mile average.
[2] $.08 per mile results from $.50 per trip reimbursement/6 mile average delivery, .50/6=.08333.

67.     Thus, while making deliveries, Dagnes consistently "kicked back" to Defendants approximately $6.24 per hour ($3.12 per delivery x 2 deliveries per hour), from January 2019 to April 19, 2022, and approximately $4.00 per hour from April 20, 2022 to June 16, 2022.[3]

68.     As a result of unreimbursed automobile expenses and other job-related expenses, defendants have failed to pay Dagnes minimum wage as required by law.

69.     Concerned that he was being paid illegally, Dagnes spoke with his accountant regarding mileage reimbursement rates.

70.     In 2019, there was a tax law change that prohibited Dagnes from deducting unreimbursed automobile expenses.

71.     After speaking to his accountant, on or about May 1, 2020, Dagnes approached Monica VanOvermeer, an owner of TJ Squared, regarding the issue.

72.     Monica VanOvermeer stated that the pay scheme would not change.

73.     Dagnes then approached Jeffrey VanOvermeer, the other owner of TJ Squared, about the issue.

74.     On or about March 31, 2022, Jeffrey VanOvermeer asserted that the pay scheme was a result of deliberate planning and was beneficial to all parties.

75.     Jeffrey VanOvermeer refused to alter the pay scheme for delivery drivers.

76.     TJ Squared refused to remedy the illegal pay scheme outlined by Dagnes.

77.     Upon information and belief, on or about January 1, 2023, Joseph VanOvermeer, son of Jeffrey VanOvermeer, purchased TJ Squared.

---

[3] 90% of deliveries were within the 9 mile radius. Using $1.50 ( for 9 of 10 deliveries on avg)  and $2.50 (for 1 of 10 deliveries)  I calculate a 'blended rate' of $1.60 paid to me per delivery. The kickback would be ($3.60 - $1.60) = $2.00 per  delivery, or $4.00 per hour.

78.     On or about July 15, 2023, Dagnes discussed the mileage reimbursement issue with Joseph VanOvermeer. No changes were made to the mileage reimbursement.

79.     Dagnes has suffered damages as the result of TJ Squared's actions and inactions.

80.     Defendants have willfully failed to pay federal, and Michigan minimum wage to Dagnes.

## V.      Causes of Action

### Count 1
### Failure to Pay Minimum Wages - Fair Labor Standards Act

81.     Dagnes restates and incorporates the foregoing allegations as if fully rewritten herein.

82.     Dagnes was a non-exempt, hourly employee entitled to receive no less than minimum wage for all hours worked.

83.     Defendants paid Dagnes at or close to minimum wage for all hours worked.

84.     Defendants required Dagnes to pay for automobile expenses and other job-related expenses out of pocket and failed to properly reimburse Dagnes for said expenses.

85.     By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Dagnes.

86.     Dagnes has been damaged by Defendants' willful failure to pay minimum wage as required by law.

87.     As a result of Defendants' willful violations, Dagnes is entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

## Count 2
### Failure to Pay Minimum Wage – M.C.L.A. §408.934

88.     Dagnes restates and incorporates the following allegations as if fully rewritten herein.

89.     Defendants paid Dagnes below minimum wage for the hours they worked by requiring them to cover automobile expenses and other job-related expenses.

90.     The Michigan Workforce Opportunity Wage Act, MCL §408.411, *et seq*. requires that employers be paid not less than minimum wage as determined by an inflation index (currently $10.33/hour) for all hours worked.

91.     Because Defendants required Dagnes to pay for automobile expenses and other job-related expenses out of pocket, Defendants failed to pay Dagnes minimum wage.

92.     By not paying Dagnes at least minimum wage for each hour worked, Defendants have violated MCL §408.934.

93.     As a result of Defendants' violations, Dagnes is entitled to damages, including, but not limited to unpaid wages, unreimbursed expenses, an additional one times unpaid wages/unreimbursed expenses in liquidated damages, costs, and attorney fees pursuant to MCL 408.939.

## Count 3
### Unjust Enrichment

94.     Dagnes restates and incorporates the foregoing allegations as if fully rewritten herein.

95.     Dagnes conferred a benefit upon Defendants, namely, providing and maintaining "tools of the trade" for Defendants' benefit.

96. The "tools of the trade" include vehicles, insurance for those vehicles, and cellphones. Defendants knew that Dagnes conferred that benefit on Defendants.

97. As described above, Defendants received benefits as a result of Dagnes providing and maintaining "tools of the trade."

98. The benefits include, but are not limited to, direct and indirect financial benefits like increased profits and increased ability to compete on the price of Defendants' products.

99. Defendants did not compensate, or under-compensated, Dagnes for these benefits.

100. Accordingly, an inequity would result to Dagnes because of the retention of this benefit by Defendants.

101. As a result of Defendants having been unjustly enriched over the last six years, Dagnes is entitled to compensation for the value of the benefit he conferred on Defendants.

WHEREFORE, Plaintiff Edward Dagnes requests the following relief:

A. Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

B. A declaratory judgment that the practices complained of herein are unlawful under the Workplace Opportunity Wage Act, MCL §408.931, *et seq*.

C. An award of damages under MCL §408.939, based on Defendants' failure to pay minimum wages, calculated as an additional one time of back wages as liquidated damages, attorneys' fees, and costs.

13

D.      An award of the value of the benefits for which defendants were unjustly enriched.

E.      An award of prejudgment and post-judgment interest.

F.      An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

G.      Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

CUNNINGHAM DALMAN, P.C.
Attorneys for Plaintiff

Date: March 6, 2025      By:   */s/ Bradley K. Glazier*
        Bradley K. Glazier (P35523)
        Robert. M. Howard (P80740)

BUSINESS ADDRESS:
      940 Monroe Avenue, N.W., Suite 253
      Grand Rapids, Michigan 49503
      (616) 458-6814

## JURY DEMAND

Plaintiff, Edward Dagnes, requests a trial by jury.

CUNNINGHAM DALMAN, P.C.
Attorneys for Plaintiff

Date: March 6, 2025      By:   */s/ Bradley K. Glazier*
        Bradley K. Glazier (P35523)
        Robert. M. Howard (P80740)

BUSINESS ADDRESS:
      940 Monroe Avenue, N.W., Suite 253
      Grand Rapids, Michigan 49503
      (616) 458-6814