UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD DAGNES, an individual,

      Plaintiff,

v.

TJ SQUARED, LLC, a Michigan limited liability company, MONICA VANOVERMEER, an individual, JOSEPH VANOVERMEER, an individual, and JEFFREY VANOVERMEER, an individual,

      Defendants.

Case No. 2:25-cv-10622
Hon. Judith E. Levy

**DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT AND AFFIRMATIVE DEFENSES**

---

Robert M. Howard (P80740)
Bradley K. Glazier (P35523)
CUNNINGHAM DALMAN PC
321 Settlers Road
Holland, MI 49422
(616) 458-6814
brad@cunninghamdalman.com

*Attorneys for Plaintiff*

Matthew S. Disbrow (P65378)
James M. Reid (P69238)
D'Antae D. Gooden (P83045)
HONIGMAN LLP
2290 First National Building
660 Woodward Ave.
Detroit, MI 48226
(313) 465-7372
mdisbrow@honigman.com
jreid@honigman.com
dgooden@honigman.com

*Attorneys for Defendants*

---

60285781.2

## <u>DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT AND AFFIRMATIVE DEFENSES</u>

Defendants TJ Squared, LLC, Monica VanOvermeer, Joseph VanOvermeer, and Jeffrey VanOvermeer (collectively "Defendants") by and through their attorneys, HONIGMAN LLP, provides their Answer to Plaintiff Edward Dagnes' ("Plaintiff") Complaint (the "Complaint") and Affirmative Defenses, stating as follows:

## I.  INTRODUCTION

1.      Edward Dagnes brings this action against Defendant TJ Squared, LLC d/b/a Jet's Pizza, Monica VanOvermeer, Joseph VanOvermeer, and Jeffrey VanOvermeer (collectively "defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff with minimum wages as required by the Fair Labor Standards Act ("FLSA") of 1938, as amended, 29 U.S.C. § 201, *et seq* and the Michigan Improved Workforce Opportunity Wage Act, MCL ("IWOWA") 408.931, *et seq.*

**<u>ANSWER:</u>**

**Paragraph 1 of the Complaint states legal conclusions, to which no response is required. To the extent a further answer is deemed necessary, Defendants only admit that Plaintiff purports to bring claims under the FLSA and the IWOWA but deny that Plaintiff is entitled to any relief whatsoever and deny all remaining allegations in Paragraph 1.**

60285781.2

2. Defendants operate a Jet's Pizza Franchise located at 978 E. Michigan Avenue, Saline, Michigan, 48176.

**ANSWER:**

**Defendants deny the allegations in Paragraph 2 of the Complaint.**

3. Defendants repeatedly and willfully violated the Fair Labor Standards Act, M.C.L.A. §408.931, by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wages for all hours worked.

**ANSWER:**

**Defendants deny the allegations in Paragraph 3 of the Complaint.**

## II. JURISDICTION AND VENUE

4. Under 28 U.S.C. §1331 and 29 U.S.C. §216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

**ANSWER:**

**Paragraph 4 of the Complaint states a legal conclusion to which no response is required. To the extent a further answer is deemed necessary, Defendants do not contest subject matter jurisdiction but deny that they have violated the FLSA.**

5. Under 28 U.S.C. §1367, this Court has supplemental jurisdiction over Plaintiff's Michigan law claims.

60285781.2

**ANSWER:**

**Paragraph 5 of the Complaint states a legal conclusion to which no response is required. To the extent a further answer is deemed necessary, Defendants do not contest supplemental jurisdiction but deny that they have violated the IWOWA, or any other Michigan statute.**

6.      Venue in this Court is proper under 28 U.S.C. §1391(b) because the parties reside in this district and the events giving rise to the claim herein occurred in this district.

**ANSWER:**

**Paragraph 6 of the Complaint states a legal conclusion to which no response is required. To the extent a response is required, Defendants do not contest venue in the United States District Court for the Eastern District of Michigan.**

## III.   PARTIES

7.      Plaintiff Edward Dagnes resides in Ann Arbor, Michigan and during the events described in this complaint, Dagnes worked within the boundaries of the Eastern District of Michigan.

**ANSWER:**

**Defendants lack knowledge or information sufficient to form a belief about the allegations contained in Paragraph 7.**

60285781.2

8. Plaintiff was an "employee" of the Defendants as defined in the FLSA and MCL §408.932.

**ANSWER:**

**Paragraph 8 of the Complaint states a legal conclusion to which no response is required.**

9. Defendant TJ Squared, LLC ("TJ Squared") is a Michigan limited liability company with its principal place of business in Saline, Michigan.

**ANSWER:**

**Defendants admit the allegations in Paragraph 9 of the Complaint.**

10. TJ Squared was organized in 2003.

**ANSWER:**

**Defendants admit the allegations in Paragraph 10 of the Complaint.**

11. TJ Squared had substantial control over Dagnes' working conditions, and over the unlawful policies and practices alleged it this complaint.

**ANSWER:**

**In response to Paragraph 11 of the Complaint, Defendants deny that TJ Squared engaged in any unlawful policy and/or practice as alleged in the Complaint. The remaining allegations of Paragraph 11 state legal conclusions to which no response is required.**

12. Upon information and belief, TJ Squared applies or causes to be applied

60285781.2

substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

**ANSWER:**

**Defendants deny the allegations in Paragraph 12 of the Complaint.**

13. TJ Squared had direct or indirect control of the terms and conditions of Dagnes' work.

**ANSWER:**

**Paragraph 13 states a legal conclusion to which no response is required.**

14. At all relevant times, TJ Squared maintained control, oversight, and direction over Dagnes, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

**ANSWER:**

**Paragraph 14 states legal conclusions to which no response is required.**

15. TJ Squared is an "employer" of Dagnes as that term is defined by the FLSA and MCL §408.932.

**ANSWER:**

**Paragraph 15 states a legal conclusion to which no response is required.**

16. At all relevant times, TJ Squared has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning

6

60285781.2

of the phrase as used in the FLSA.

**ANSWER:**

**Paragraph 16 states a legal conclusion to which no response is required.**

17.   TJ Squared's gross revenue exceeds $500,000 per year.

**ANSWER:**

**Paragraph 17 states a legal conclusion to which no response is required.**

18.   Monica VanOvermeer owned and operated TJ Squared until January 1, 2023.

**ANSWER:**

**Defendants deny the allegations in Paragraph 18 of the Complaint.**

19.   Joseph VanOvermeer owns and operates TJ Squared from January 1, 2023 to present.

**ANSWER:**

**Defendants deny the allegations in Paragraph 19 of the Complaint.**

20.   Monica VanOvermeer and Joseph VanOvermeer owned and operated Defendants' Jet's Pizza restaurant in Saline, Michigan.

**ANSWER:**

**Defendants only admit that Monica VanOvermeer owned and operated Defendants' Jet's Pizza restaurant in Saline, Michigan until February 1, 2023 and that Joseph VanOvermeer owned and operated Defendants' Jet's Pizza**

7

**restaurant in Saline, Michigan from February 1, 2023 onward.**

21.     Monica VanOvermeer and Joseph VanOvermeer are individually liable to Dagnes under the definitions of "employer" set forth in the FLSA and MCL §408.932, because they own and operate Defendants' Jet's Pizza store, serve as a manager of Defendants' Jet's Pizza store, ultimately control significant aspects of the store's day-to-day functions, and ultimately control compensation and reimbursement of employees. 29 U.S.C. §203(d).

**ANSWER:**

**Paragraph 21 of the Complaint states legal conclusions to which no response is required.  To the extent a further answer is deemed necessary, Defendants deny that they have violated the FSLA or the IWOWA and that Plaintiff is entitled to any relief under those statutes, or any other federal or Michigan statute. Further answering, Defendants deny any remaining allegations contained in Paragraph 21 of the Complaint.**

22.     At all relevant times, by virtue of their roles as owners and operators of Defendants' Jet's Pizza store, Monica VanOvermeer and Joseph VanOvermeer had financial control over the operations at each of Defendants' Jet's Pizza store.

**ANSWER:**

**Defendants deny the allegations in Paragraph 22 of the Complaint.**

23.     At all relevant times, by virtue of their roles as owners and operators of

60285781.2

Defendants' Jet's Pizza store, Monica VanOvermeer and Joseph VanOvermeer had a role in significant aspects of Defendants' Jet's Pizza store's day to day operations.

**ANSWER:**

 **Defendants deny the allegations in Paragraph 23 of the Complaint.**

24. At all relevant times, by virtue of their roles as owners and operators of Defendants' Jet's Pizza store, Monica VanOvermeer and Joseph VanOvermeer had control over Defendants' Jet's Pizza store's pay policies.

**ANSWER:**

 **Defendants deny the allegations in Paragraph 24 of the Complaint.**

25. At all relevant times, by virtue of their roles as owners and operators of Defendants' Jet's Pizza store, Monica VanOvermeer and Joseph VanOvermeer had power over personnel and payroll decisions at the Defendants' Jet's Pizza store, including but not limited to influence of delivery driver pay.

**ANSWER:**

 **Defendants deny the allegations in Paragraph 25 of the Complaint.**

26. At all relevant times, by virtue of their roles as owners and operators of Defendants' Jet's Pizza store, Monica VanOvermeer and Joseph VanOvermeer had the power to hire, fire and discipline employees, including delivery drivers at Defendants' Jet's Pizza store.

**ANSWER:**

60285781.2

**Defendants deny the allegations in Paragraph 26 of the Complaint.**

27. At all relevant times, by virtue of their roles as owners and operators of Defendants' Jet's Pizza store, Monica VanOvermeer and Joseph VanOvermeer had the power to stop any illegal pay practices that harmed delivery drivers at Defendants' Jet's Pizza store.

**ANSWER:**

**In response to Paragraph 27 of the Complaint, Defendants deny that Defendants engaged in any illegal pay practices that harmed their delivery drivers, or any employees for that matter, and deny the remaining allegations of this Paragraph.**

28. At all relevant times, by virtue of their roles as owners and operators of Defendants' Jet's Pizza store, Monica VanOvermeer and Joseph VanOvermeer had the power to transfer the assets and liabilities of Defendants.

**ANSWER:**

**Defendants deny the allegations in Paragraph 28 of the Complaint.**

29. At all relevant times, by virtue of their roles as owners and operators of Defendants' Jet's Pizza store, Monica VanOvermeer and Joseph VanOvermeer had the power to declare bankruptcy on behalf of Defendants.

**ANSWER:**

**Defendants deny the allegations in Paragraph 29 of the Complaint.**

10

60285781.2

30.    At all relevant times, by virtue of their roles as owners and operators of Defendants' Jet's Pizza store, Monica VanOvermeer and Joseph VanOvermeer had the power to enter into contracts on behalf of each of Defendants' Jet's Pizza store.

**ANSWER:**

**Defendants deny the allegations in Paragraph 30 of the Complaint.**

31.    At all relevant times, by virtue of their roles as owners and operators of Defendants' Jet's Pizza store, Monica VanOvermeer and Joseph VanOvermeer had the power to close, shut down, and/or sell each of the Defendants' Jet's Pizza store.

**ANSWER:**

**Defendants deny the allegations in Paragraph 31 of the Complaint.**

32.    At all relevant times, by virtue of their roles as owners and operators of Defendants' Jet's Pizza store, Monica VanOvermeer and Joseph VanOvermeer had authority over the overall direction of Defendants' Jet's Pizza store and was ultimately responsible for its operations.

**ANSWER:**

**Defendants deny the allegations in Paragraph 32 of the Complaint.**

33.    Jeffrey VanOvermeer operated TJ Squared's Jets Pizza Store in Dexter, Michigan.

**ANSWER:**

**Defendants deny the allegations in Paragraph 33 of the Complaint.**

11

60285781.2

34.     Jeffrey VanOvermeer often worked in the Saline Jets Pizza store.

ANSWER:

**Defendants deny the allegations in Paragraph 34 of the Complaint.**

35.     When Jeffrey VanOvermeer worked in the Saline store, he exercised managerial control over the operations and employees of that store.

ANSWER:

**Defendants deny the allegations in Paragraph 35 of the Complaint.**

36.     Jeffrey VanOvermeer was an employer for purposes of the FLSA and Michigan wage laws.

ANSWER:

**Paragraph 36 states a legal conclusion to which no response is required.**

37.     Defendants employed Dagnes as a delivery driver.

ANSWER:

**Defendants admit that Plaintiff worked as a delivery driver but deny the remaining allegations in Paragraph 37 of the Complaint.**

38.     Defendants had substantial control over Dagnes' working conditions, and over the unlawful policies and practices alleged herein.

ANSWER:

**In response to Paragraph 38 of the Complaint, Defendants deny that they engaged in any unlawful policy and/or practice as alleged in the Complaint.**

60285781.2

**The remaining allegations of Paragraph 38 state legal conclusions to which no response is required.**

39.     Defendants suffered or permitted Dagnes to work.

**ANSWER:**

**Paragraph 39 states a legal conclusion to which no response is required.**

40.     Defendants had direct or indirect control of the terms and conditions of Dagnes' work and also exercised that authority.

**ANSWER:**

**Paragraph 40 states legal conclusions to which no response is required.**

41.     At all relevant times, Defendants maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

**ANSWER:**

**Paragraph 41 states legal conclusions to which no response is required.**

### IV. FACTUAL ALLEGATIONS

42.     During all relevant times, defendants operated the Jet's Pizza franchise in Saline, Michigan.

**ANSWER:**

**Defendants deny the allegations in Paragraph 42 of the Complaint.**

60285781.2

43.     The primary function of defendants Jet's Pizza store is to sell pizza and other food items to customers, whether they chose carry out, or have their food delivered.

**ANSWER:**

**Defendants admit that Jet's Pizza stores sell pizza and other food items to customers that can be delivered or picked up at the customer's option.  The remainder of the allegations in Paragraph 43 of the Complaint set forth legal conclusions for which no response is required.**

44.     Defendants employ delivery drivers who are primarily responsible for delivering pizzas and other food items to customers' homes and workplaces.

**ANSWER:**

**Defendants admit that some Jet's Pizza employees work as delivery drivers and deliver pizza and other food items to customers.  The remainder of the allegations in Paragraph 44 of the Complaint set forth legal conclusions for which no response is required.**

45.     Dagnes is a former delivery driver employed by defendants at their Jet's Pizza store in Saline, Michigan.

**ANSWER:**

**Defendants admit Plaintiff worked as a delivery driver at the Jet's Pizza store in Saline, Michigan, some period of time, but deny that all Defendants**

14

**employed Plaintiff, and further deny any remaining allegations contained in Paragraph 45 of the Complaint.**

46.    Dagnes worked at defendants' Jet's Pizza store from approximately June 2018 until June 16, 2024.

**ANSWER:**

**Defendants admit that Plaintiff worked at Jet's Pizza from approximately June 2018 until June 16, 2024, but deny the remaining allegations of Paragraph 46 of the Complaint.**

47.    All delivery drivers employed at defendants' store during the relevant time period have had essentially the same job duties—to deliver pizza and other food items to customers.

**ANSWER:**

**Defendants deny the allegations in Paragraph 47 of the Complaint.**

48.    Dagnes delivered pizza and other food items to defendants' customers' homes and businesses.

**ANSWER:**

**Defendants admit Plaintiff delivered pizza and other food items to customers while working for Jet's Pizza in Saline, Michigan, but deny the remaining allegations contained in Paragraph 48 of the Complaint.**

49.    When he was not making deliveries, Dagnes worked inside the

60285781.2

restaurant, completing tasks such as scraping, wiping, and oiling deep dish pans, folding pizza boxes, cleaning up around the store, and taking care of other general tasks for the operation of the restaurant.

**ANSWER:**

**Defendants deny the allegations in Paragraph 49 of the Complaint.**

50.	At all relevant times, Dagnes was paid an hourly wage rate at or close to minimum wage for the hours he worked for defendants.

**ANSWER:**

**Defendants deny the allegations in Paragraph 50 of the Complaint.**

51.	Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering pizza and other food items.

**ANSWER:**

**Defendants deny the allegations in Paragraph 51 of the Complaint.**

52.	Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone costs, and other equipment necessary for delivery drivers to complete their job duties.

**ANSWER:**

**Defendants deny the allegations in Paragraph 52 of the Complaint.**

16

60285781.2

53.     Pursuant to such requirements, Dagnes purchased uniforms and work attire, gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation, automobile financing, and incurred cell phone and data charges all for the primary benefit of defendants.

**ANSWER:**

**Defendants deny the allegations in Paragraph 53 of the Complaint.**

54.     Defendants did not keep track of their delivery drivers' actual expenses.

**ANSWER:**

**Defendants deny the allegations in Paragraph 54 of the Complaint.**

55.     Defendants did not reimburse delivery drivers for their actual expenses.

**ANSWER:**

**Defendants deny the allegations in Paragraph 55 of the Complaint.**

56.     Defendants did not reimburse delivery drivers at the IRS standard business mileage rate for all of the miles they drive completing deliveries.

**ANSWER:**

**Paragraph 56 of the Complaint set forth legal conclusions for which no response is required.**

57.     At all relevant times, Dagnes was reimbursed a flat per delivery amount of $.50/delivery for the expenses he incurred from January 2019 to April 19, 2022, and a flat per delivery amount of $1.50, or $2.50/delivery for the expenses he

17

incurred from April 20, 2022 onward. Drivers were paid $1.50 for deliveries less than nine (9) miles roundtrip and $2.50 for deliveries greater than nine (9) miles roundtrip. (Rates based on distance from defendants' Jet's Pizza location in Saline).

**ANSWER:**

> **Defendants deny the allegations in Paragraph 57 of the Complaint.**

58. Defendants created the reimbursement rate based on their alleged "reasonable approximation" of a delivery driver's expenses.

**ANSWER:**

> **Defendants deny the allegations in Paragraph 58 of the Complaint.**

59. Employers are not permitted to use reasonable approximation to determine the reimbursement paid to delivery drivers for the use of their vehicles. *Parker v. Battle Creek Pizza.*, 95 F.4th 1009, 1016 (6th Cir. 2024).

**ANSWER:**

> **Paragraph 59 states a legal conclusion to which no response is required.**

60. Dagnes typically averaged six miles per round-trip delivery.

**ANSWER:**

> **Defendants deny the allegations in Paragraph 60 of the Complaint.**

61. Dagnes typically made at least two (2) deliveries per hour.

**ANSWER:**

> **Defendants deny the allegations in Paragraph 61 of the Complaint.**

18

60285781.2

62.    Thus defendants' effective reimbursement rate was .08 cents per mile from 2019 to April 19, 2022, and $.25 per mile at $1.50, or $.20 per mile at $2.50.[1]

**ANSWER:**

**Defendants deny the allegations in Paragraph 62 of the Complaint.**

63.    According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

    a.    2022: 60.5 cents/mile
    b.    2023: 65.5 cents/mile
    c.    2024: 67 cents/mile.

**ANSWER:**

**Defendants admit the allegations of Paragraph 63 of the Complaint.**

64.    Regardless of the precise amount of the per-delivery reimbursement at any given point in time, defendants' reimbursement formula has resulted in an unreasonable underestimation of delivery drivers' automobile expenses throughout the recovery period, causing systematic violations of the minimum wage laws.

**ANSWER:**

**Defendants deny the allegations in Paragraph 64 of the Complaint.**

65.    Because defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery

---

[1] $.08 per mile results from $.50 per trip reimbursement/6 mile average delivery, .50/60-.08333, $.25 per mile results from $1.50/6 miles, and $.20 from $2.50/12 mile average.

60285781.2

drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to defendants an amount sufficient to cause minimum wage violations. See 29 C.F.R. §531.35.

**ANSWER:**

**Defendants deny the allegations in Paragraph 65 of the Complaint.**

66.     In 2022, for example, the IRS business mileage reimbursement was $.605 per mile, which reasonably approximated the automobile expenses incurred delivering  pizzas.  http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Thus in 2022, every mile driven on the job decreased Dagnes' net wages by approximately $.52 ($.60 - $.08) per mile.[2] Considering Dagnes' estimate of about 6 average miles per delivery, Defendants under-reimbursed him about $3.12 per delivery ($.52 x 6 average miles).

**ANSWER:**

**Defendants deny the allegations in Paragraph 66 of the Complaint.**

67.     Thus, while making deliveries, Dagnes consistently "kicked back" to Defendants approximately $6.24 per hour ($3.12 per delivery x 2 deliveries per hour), from January 2019 to April 19, 2022, and approximately $4.00 per hour from April 20, 2022 to June 16, 2022.[3]

---

[2] $.08 per mile results from $.50 per trip reimbursement/6 mile average delivery, .50/6=.08333.

[3] 90% of deliveries were within the 9 mile radius.  Using $1.50 (for 9 of 10 deliveries on avg) and $2.50 (for 1 of 10 deliveries) I calculated a 'blended rate' of $1.60 to me per delivery.  The

60285781.2

**ANSWER:**

**Defendants deny the allegations in Paragraph 67 of the Complaint.**

68.    As a result of unreimbursed automobile expenses and other job-related expenses, defendants have failed to pay Dagnes minimum wage as required by law.

**ANSWER:**

**Defendants deny the allegations in Paragraph 68 of the Complaint.**

69.    Concerned that he was being paid illegally, Dagnes spoke with his accountant regarding mileage reimbursement rates.

**ANSWER:**

**Defendants lack knowledge or information sufficient to form a belief about the allegations contained in Paragraph 69.**

70.    In 2019, there was a tax law change that prohibited Dagnes from deducting unreimbursed automobile expenses.

**ANSWER:**

**Defendants lack knowledge or information sufficient to form a belief about the allegations contained in Paragraph 70.**

71.    After speaking to his accountant, on or about May 1, 2020, Dagnes approached Monica VanOvermeer, an owner of TJ Squared, regarding the issue.

**ANSWER:**

---

kickback would be ($3.60 - $1.60) = $2.00 per delivery, or $4.00 per hour.

60285781.2

**Defendants deny the allegations in Paragraph 71 of the Complaint.**

72.     Monica VanOvermeer stated that the pay scheme would not change.

**ANSWER:**

**Defendants admit that Monica VanOvermeer stated that she believed the driving reimbursement process was compliant with the law and there would be no change to it but deny the remaining allegations of Paragraph 72.**

73.     Dagnes then approached Jeffrey VanOvermeer, the other owner of TJ Squared, about the issue.

**ANSWER:**

**Defendants deny the allegations in Paragraph 73 of the Complaint.**

74.     On or about March 31, 2022, Jeffrey VanOvermeer asserted that the pay scheme was a result of deliberate planning and was beneficial to all parties.

**ANSWER:**

**Defendants deny the allegations in Paragraph 74 of the Complaint.**

75.     Jeffrey VanOvermeer refused to alter the pay scheme for delivery drivers.

**ANSWER:**

**Defendants admit that the delivery reimbursement process was not substantially changed, but deny the remaining allegations contained in Paragraph 75 of the Complaint.**

22

76.    TJ Squared refused to remedy the illegal pay scheme outlined by Dagnes.

**ANSWER:**

**Defendants deny the allegations in Paragraph 76 of the Complaint.**

77.    Upon information and belief, on or about January 1, 2023, Joseph VanOvermeer, son of Jeffrey VanOvermeer, purchased TJ Squared.

**ANSWER:**

**Defendants deny the allegations in Paragraph 77 of the Complaint.**

78.    On or about July 15, 2023, Dagnes discussed the mileage reimbursement issue with Joseph VanOvermeer. No changes were made to the mileage reimbursement.

**ANSWER:**

**Defendants deny the allegations in Paragraph 78 of the Complaint.**

79.    Dagnes has suffered damages as the result of TJ Squared's actions and inactions.

**ANSWER:**

**Defendants deny the allegations in Paragraph 79 of the Complaint.**

80.    Defendants have willfully failed to pay federal, and Michigan minimum wage to Dagnes.

**ANSWER:**

23

**Defendants deny the allegations in Paragraph 80 of the Complaint.**

## V.      Causes of Action

### Count 1
### Failure to Pay Minimum Wages - Fair Labor Standards Act

81.     Dagnes restates and incorporates the foregoing allegations as if fully rewritten herein.

**ANSWER:**

**Defendants restate and incorporate their responses to the prior paragraphs.**

82.     Dagnes was a non-exempt, hourly employee entitled to receive no less than minimum wage for all hours worked.

**ANSWER:**

**Defendants admit that Plaintiff was an hourly employee.  The remaining allegations of Paragraph 82 state legal conclusions to which no response is required.**

83.     Defendants paid Dagnes at or close to minimum wage for all hours worked.

**ANSWER:**

**Defendants deny the allegations in Paragraph 83 of the Complaint.**

84.     Defendants required Dagnes to pay for automobile expenses and other

24

job-related expenses out of pocket and failed to properly reimburse Dagnes for said expenses.

**ANSWER:**

**Defendants deny the allegations in Paragraph 84 of the Complaint.**

85.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Dagnes.

**ANSWER:**

**Defendants deny the allegations in Paragraph 85 of the Complaint.**

86.    Dagnes has been damaged by Defendants' willful failure to pay minimum wage as required by law.

**ANSWER:**

**Defendants deny the allegations in Paragraph 86 of the Complaint.**

87.    As a result of Defendants' willful violations, Dagnes is entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**ANSWER:**

**Defendants deny the allegations in Paragraph 87 of the Complaint.**

<u>**Count 2**</u>
**Failure to Pay Minimum Wage – M.C.L.A. §408.934**

88.    Dagnes restates and incorporates the following allegations as if fully

60285781.2

rewritten herein.

**ANSWER:**

**Defendants restate and incorporate their responses to the prior paragraphs.**

89.     Defendants paid Dagnes below minimum wage for the hours they worked by requiring them to cover automobile expenses and other job-related expenses.

**ANSWER:**

**Defendants deny the allegations in Paragraph 89 of the Complaint.**

90.     The Michigan Workforce Opportunity Wage Act, MCL §408.411, *et seq*. requires that employers be paid not less than minimum wage as determined by an inflation index (currently $10.33/hour) for all hours worked.

**ANSWER:**

**Paragraph 90 of the Complaint states legal conclusions to which no response is required.**

91.     Because Defendants required Dagnes to pay for automobile expenses and other job-related expenses out of pocket, Defendants failed to pay Dagnes minimum wage.

**ANSWER:**

**Defendants deny the allegations in Paragraph 91 of the Complaint.**

26

60285781.2

92. By not paying Dagnes at least minimum wage for each hour worked, Defendants have violated MCL §408.934.

**ANSWER:**

**Defendants deny the allegations in Paragraph 92 of the Complaint.**

93. As a result of Defendants' violations, Dagnes is entitled to damages, including, but not limited to unpaid wages, unreimbursed expenses, an additional one times unpaid wages/unreimbursed expenses in liquidated damages, costs, and attorney fees pursuant to MCL 408.939.

**ANSWER:**

**Defendants deny the allegations in Paragraph 93 of the Complaint.**

**Count 3**
**Unjust Enrichment**

94. Dagnes restates and incorporates the foregoing allegations as if fully rewritten herein.

**ANSWER:**

**Defendants restate and incorporate their responses to the prior paragraphs.**

95. Dagnes conferred a benefit upon Defendants, namely, providing and maintaining "tools of the trade" for Defendants' benefit.

**ANSWER:**

27

60285781.2

**Defendants deny the allegations in Paragraph 95 of the Complaint.**

96.     The "tools of the trade" include vehicles, insurance for those vehicles, and cellphones. Defendants knew that Dagnes conferred that benefit on Defendants.

**ANSWER:**

**Defendants deny the allegations in Paragraph 96 of the Complaint.**

97.     As described above, Defendants received benefits as a result of Dagnes providing and maintaining "tools of the trade."

**ANSWER:**

**Defendants deny the allegations in Paragraph 97 of the Complaint.**

98.     The benefits include, but are not limited to, direct and indirect financial benefits like increased profits and increased ability to compete on the price of Defendants' products.

**ANSWER:**

**Defendants deny the allegations in Paragraph 98 of the Complaint.**

99.     Defendants did not compensate, or under-compensated, Dagnes for these benefits.

**ANSWER:**

**Defendants deny the allegations in Paragraph 99 of the Complaint.**

100.    Accordingly, an inequity would result to Dagnes because of the retention of this benefit by Defendants.

60285781.2

**ANSWER:**

**Defendants deny the allegations in Paragraph 100 of the Complaint.**

101. As a result of Defendants having been unjustly enriched over the last six years, Dagnes is entitled to compensation for the value of the benefit he conferred on Defendants.

**ANSWER:**

**Defendants deny the allegations in Paragraph 101 of the Complaint.**

## PRAYER FOR RELIEF

Defendants deny that Plaintiff is entitled to any of the relief requested in the prayer for relief set forth in the Complaint.

WHEREFORE, Defendants request that this Court dismiss the Complaint, with prejudice; enter judgment in Defendants' favor on all claims asserted in the Complaint; award Defendants their costs, including reasonable attorneys' fees; and grant Defendants any other relief this Court deems just and proper.

## AFFIRMATIVE AND OTHER DEFENSES

Defendants assert the following affirmative and other defenses without assuming any burdens of production or proof that, pursuant to law, belong to Plaintiff. Defendants reserve the right to amend their answer and to assert any additional defenses and affirmative defenses as may become available or apparent during the course of this litigation.

29

60285781.2

1.     The Complaint fails to state a claim upon which relief may be granted.

2.     Plaintiff's claims are barred by the provisions of the Portal-to-Portal Act, 29 U.S.C. § 254(a)(2), as to all hours during which Plaintiff were engaged in activities which were preliminary or postliminary to their principal activities.

3.     To the extent that Defendant failed to comply with any aspect of the FLSA, said conduct was not willful or intentional, but rather occurred in good faith.

4.     Defendant's actions with respect to Plaintiff was at all times lawful and permitted by the applicable law.

5.     Plaintiff's claims may be barred, in whole or in part, by the doctrines of waiver, estoppel and/or laches.

6.     Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations.

7.     The Complaint, and each purported claim for relief alleged therein, is barred to the extent that Plaintiff failed to report or give notice of the allegations upon which he bases his Complaint to his employer and/or failed to avail himself of the employer's internal procedures, means, or methods relating to violations, grievances, complaints, or disputes.

8.     Plaintiff has failed to state any facts entitling him to any liquidated or punitive damages.

9.     Plaintiff's claims, in whole or in part, are barred by the provisions of

30

Section 10 of the Portal-to-Portal Act, 29 U.S.C. § 259.

10.    Plaintiff's claims for liquidated damages are barred, in whole or in part, under Section 11 of the Portal-to Portal Act, 29 U.S.C. § 260.

11.    The Complaint, and each and every purported claim for relief alleged therein, is barred because any recovery from Defendant would result in the unjust enrichment of Plaintiff.

12.    To the extent Plaintiff, would be entitled to any recovery for unpaid wages, such recovery should be reduced by, and Defendant is entitled to an offset for, any amounts paid to Plaintiff for non-compensable time or double-time for which Plaintiff was paid amounts that were not required by law.

13.    Some of the relief Plaintiff seeks in this action, including, without limitation, equitable or injunctive relief are not available to Plaintiff.

Defendant reserves the right to amend its Answer, to list such additional affirmative defenses, and to plead any counterclaims or other claims as may become available or apparent during discovery and through trial.

Respectfully submitted,

HONIGMAN LLP

By: /s/ *Matthew S. Disbrow*
Matthew S. Disbrow (P65378)
James M. Reid (P69238)
D'Antae D. Gooden (P83045)
HONIGMAN LLP

31

60285781.2

2290 First National Building
660 Woodward Ave.
Detroit, MI 48226
(313) 465-7372
mdisbrow@honigman.com
jreid@honigman.com
dgooden@honigman.com

*Attorneys for Defendants*

Dated: May 14, 2025

32

60285781.2

## CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2025, I electronically filed *Defendant's Answer and Affirmative Defenses To Plaintiff's Complaint And Jury Demand* and this *Certificate of Service* with the Clerk of the Court using the ECF system, which will send notification of such filing to those registered persons/members of the Court's ECF system who are participants in these proceedings via electronic notice of this filing.

*/s/ Matthew S. Disbrow*

Dated: May 14, 2025

60285781.2